IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARYL ROYSTER,
    Plaintiff,

vs.                                      Case No.:  3:05cv445/MCR/EMT

GOVERNOR JEB BUSH, et al.
     Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This cause is before the court on Plaintiff's second amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 8).  Leave to proceed in forma pauperis has been granted.

    Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."   28 U.S.C.A.  § 1915(e)(2)(B).  A complaint is frivolous under section 1915(d) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," Id. at 327, 109 S.Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle her to relief.  Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997).  Upon review of Plaintiff's complaint, the court concludes that it does not present

an actionable claim.

Plaintiff names as Defendants in this action Jeb Bush, the Governor of the State of Florida, Jim Paul, the superintendent of the Escambia County School District, and Ms. Taite, the head principal of Montclair Elementary School (Doc. 8 at 1, 2). Plaintiff states that he is suing Defendants in their individual capacities (*id*. at 1). Plaintiff alleges that in 1999 Governor Bush enacted a law that requires children in the third and fourth grades to pass a standardized test, specifically, the Florida Comprehensive Achievement Test (FCAT) to be promoted to the next grade level (*id.* at 3). Superintendent Paul implemented this law in the Escambia County public schools (*id*.). In 2004, Plaintiff's daughter, who is black, was required to repeat the third grade because she did not pass the FCAT (*id*.). Plaintiff's son repeated the fourth grade because he did not pass the FCAT in 2005 (*id*.). Plaintiff alleges the law has discriminated against his children by using their test scores as the sole criterion for determining whether they may be promoted to the next grade level (*id*. at 3).

In an unrelated claim, Plaintiff alleges that three years ago, he discussed with Ms. Taite the possibility that the Montclair Elementary school building may contain lead and asbestos (*id*. at 3). He states he and Ms. Taite exchanged information about the issue (*id*.). Plaintiff states that his daughter was having "problems" in school, and when he discussed them with her teacher, her teacher stated that his daughter was drinking water from the faucet at school (*id*.). Plaintiff states he informed the teacher that the water was the source of his daughter's problems because the water contained lead (*id*.). Plaintiff alleges he filed a complaint with the local health department on February 3, 2006, and warned Superintendent Paul regarding the dangers of lead and asbestos on February 22, 2006 (*id*.). Plaintiff contends Defendants Bush, Paul, and Taite are knowingly placing children at risk of exposure to lead and asbestos (*id*.).

Plaintiff claims that Defendants' conduct violated the Equal Protection Clause, the Eighth Amendment prohibition against cruel and unusual punishment, 42 U.S.C. § 2000d (Title VI of the Civil Rights Act of 1964), 42 U.S.C. § 4846 (the Lead-Based Paint Poisoning Protection Act of 1971 (LPPPA)), 42 U.S.C. §§ 300j-21-25 (the Lead Contamination Control Act (LCCA)), and the Florida drinking water act (*id*. at 4).

As relief, Plaintiff seeks compensatory damages in the amount of $100,000.00 for pain and

suffering (*id*. at 4).  Additionally, he seeks injunctive relief as follows:  (1) an order enjoining the State of Florida from using FCAT scores as the sole criterion for making "educational decisions," (2) an order requiring the State to give more money to the "poor" schools to enable them to upgrade their schools to compete with the "white" schools, (3) an order requiring the State to promote Plaintiff's children, as well as all of the children of the State of Florida, to their "right" grade level, and (4) an order requiring the State to rid all public schools of lead and asbestos (*id*.).

The Florida statute that imposes the FCAT requirement provides, in relevant part:

**1008.22.  Student assessment program for public schools**

**(1)  Purpose.**--The primary purposes of the student assessment program are to provide information needed to improve the public schools by enhancing the learning gains of all students and to inform parents of the educational progress of their public school children.  The program must be designed to:

(a)  Assess the annual learning gains of each student toward achieving the Sunshine State Standards appropriate for the student's grade level.

(b)  Provide data for making decisions regarding school accountability and recognition.

(c)  Identify the educational strengths and needs of students and the readiness of students to be promoted to the next grade level or to graduate from high school with a standard high school diploma.

(d)  Assess how well educational goals and performance standards are met at the school, district, and state levels.

(e)  Provide information to aid in the evaluation and development of educational programs and policies.

(f)  Provide information on the performance of Florida students compared with others across the United States.
. . . .
**(3)   Statewide assessment program.**--The commissioner shall design and implement a statewide program of educational assessment that provides information for the improvement of the operation and management of the public schools, . . .

(a) Submit to the State Board of Education a list that specifies student skills and competencies to which the goals for education specified in the state plan apply, including, but not limited to, reading, writing, science, and mathematics.  The skills

and competencies must include problem-solving and higher-order skills as appropriate and shall be known as the Sunshine State Standards as defined in s. 1000.21. The commissioner shall select such skills and competencies after receiving recommendations from educators, citizens, and members of the business community. The commissioner shall submit to the State Board of Education revisions to the list of student skills and competencies in order to maintain continuous progress toward improvements in student proficiency.

. . . .

(c) Develop and implement a student achievement testing program known as the Florida Comprehensive Assessment Test (FCAT) as part of the statewide assessment program, to be administered annually in grades 3 through 10 to measure reading, writing, science, and mathematics. Other content areas may be included as directed by the commissioner. The testing program must be designed so that:

1. The tests measure student skills and competencies adopted by the State Board of Education as specified in paragraph (a). The tests must measure and report student proficiency levels in reading, writing, mathematics, and science. The commissioner shall provide for the tests to be developed or obtained, as appropriate, through contracts and project agreements with private vendors, public vendors, public agencies, postsecondary educational institutions, or school districts. The commissioner shall obtain input with respect to the design and implementation of the testing program from state educators and the public.

2. The testing program will include a combination of norm-referenced and criterion-referenced tests and include, to the extent determined by the commissioner, questions that require the student to produce information or perform tasks in such a way that the skills and competencies he or she uses can be measured.

3. Each testing program, whether at the elementary, middle, or high school level, includes a test of writing in which students are required to produce writings that are then scored by appropriate methods.

4. A score is designated for each subject area tested, below which score a student's performance is deemed inadequate. The school districts shall provide appropriate remedial instruction to students who score below these levels.

. . . .

6. Participation in the testing program is mandatory for all students attending public school, including students served in Department of Juvenile Justice programs, except as otherwise prescribed by the commissioner. If a student does not participate in the statewide assessment, the district must notify the student's parent and provide the parent with information regarding the implications of such nonparticipation. If modifications are made in the student's instruction to provide accommodations that would not be permitted on the statewide assessment tests, the district must notify the

student's parent of the implications of such instructional modifications. A parent must provide signed consent for a student to receive instructional modifications that would not be permitted on the statewide assessments and must acknowledge in writing that he or she understands the implications of such accommodations. The State Board of Education shall adopt rules, based upon recommendations of the commissioner, for the provision of test accommodations and modifications of procedures as necessary for students in exceptional education programs and for students who have limited English proficiency. Accommodations that negate the validity of a statewide assessment are not allowable.

. . . .

**(4) District testing programs.**--Each district school board shall periodically assess student performance and achievement within each school of the district. The assessment programs must be based upon local goals and objectives that are compatible with the state plan for education and that supplement the skills and competencies adopted by the State Board of Education. All school districts must participate in the statewide assessment program designed to measure annual student learning and school performance.

**(5) School testing programs.**--Each public school shall participate in the statewide assessment program, unless specifically exempted by state board rule based on serving a specialized population for which standardized testing is not appropriate. Student performance data shall be analyzed and reported to parents, the community, and the state. Student performance data shall be used in developing objectives of the school improvement plan, evaluation of instructional personnel, evaluation of administrative personnel, assignment of staff, allocation of resources, acquisition of instructional materials and technology, performance-based budgeting, and promotion and assignment of students into educational programs. The analysis of student performance data also must identify strengths and needs in the educational program and trends over time. The analysis must be used in conjunction with the budgetary planning processes developed pursuant to s. 1008.385 and the development of the programs of remediation.

Initially, Plaintiff's allegations fail to state an Eighth Amendment violation. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. The Eighth Amendment applies only to cases involving punishment. Austin v. United States, 509 U.S. 602, 609-10, 113 S.Ct. 2801, 2805-06, 125 L.Ed.2d 488 (1993) ("The purpose of the Eighth Amendment, putting the Bail Clause to one side, was to limit the government's power to punish. The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment. The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, "as punishment for some

offense". . . . [T]he [operative] question is . . . whether [the challenged government conduct] is punishment.") (citing <u>Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989));. *see also* <u>Ingraham v. Wright</u>, 430 U.S. 651, 664-668, 97 S.Ct. 1401, 1408-1411, 51 L.Ed.2d 711 (1977) (Cruel and Unusual Punishments Clause of Eighth Amendment was designed to protect those convicted of crime and circumscribes criminal process in three ways:  it limits kinds of punishment that can be imposed on those convicted of crimes, it proscribes punishment grossly disproportionate to severity of crime, and it imposes substantive limits on what can be made criminal and punished as such.).  In this case, Plaintiff's legal theory that Defendants' failure to promote his children to the next grade level and exposing them to lead and asbestos constitutes punishment is indisputably meritless; thus, his Eighth Amendment claim should be dismissed as frivolous.

Additionally, Plaintiff has failed to state a claim under the Equal Protection Clause.  As Plaintiff was advised in two previous orders to amend issued by this court (Docs. 5, 7), to state an equal protection claim against Defendants, Plaintiff must allege Defendants acted with the intent or purpose to discriminate.  "[O]fficial action will not be held unconstitutional solely because it results in racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  <u>Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.</u>, 429 U.S. 252, 264-65, 97 S.Ct. 555, 563, 50 L. Ed. 2d 450 (1977); <u>Parks v. City of Warner Robins, Ga.</u>, 43 F.3d 609, 616-17 (11th Cir. 1995) (citations omitted).  "Possible indicia of discriminatory intent include a clear pattern of disparate impact, unexplainable on grounds other than race; the historical background of the challenged decision or the specific events leading up to the decision; procedural or substantive departures from the norm; and the legislative or administrative history of the challenged statute."  <u>Parks</u>, 43 F.3d at 617 (citing <u>Village of Arlington Heights</u>, 429 U.S. at 266-68).

In the instant case, Plaintiff's allegations cite none of the traditional indicia of discriminatory intent listed by the Court in <u>Arlington Heights</u>.  He has not alleged facts surrounding enactment or implementation of the law, or application of the law to his children, that could indicate discriminatory intent, nor has he identified any such intent in the legislative history of the statute. Furthermore, his situation is not the result of any procedural or substantive departures from the norm

that would reveal discriminatory intent.

Additionally, Plaintiff cannot succeed on his claim that the FCAT requirement has a disparate impact on black children in violation of Title VI. The elements of a disparate impact claim under Title VI's regulations are substantially similar to those applicable in an employment discrimination action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e through 2000e-17. *See* Georgia State Conference of Branches of NAACP v. Georgia, 775 F.2d 1403, 1417 (11th Cir. 1985) (quoting Alexander v. Choate, 469 U.S. 287, 293, 105 S.Ct. 712, 717, 83 L.Ed.2d 661 (1985)). *Accord* Quarles v. Oxford Municipal Separate Sch. Dist., 868 F.2d 750, 754, n. 3 (5th Cir. 1989). The Title VI regulations require a court to examine two issues: whether a challenged practice has a sufficiently adverse racial impact--in other words, whether it falls significantly more harshly on a minority racial group than on the majority-- and, if so, whether the practice is nevertheless adequately justified. Georgia State Conference, 775 F.2d at 1417; Quarles, 868 F.2d at 754, n. 3.

The Eleventh Circuit explained the elements of a disparate impact claim in In re Employment Discrimination Litigation Against the State of Alabama, 198 F.3d 1305, 1311-12 (11th Cir. 1999). The Eleventh Circuit articulated the first element as follows:

> In the first stage of a disparate impact case, the "complaining party [must] demonstrate [ ] that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). To "demonstrate" means to "meet[ ] the burdens of production and persuasion." 42 U.S.C. § 2000e(m) (1994). In other words, in order to surmount the first hurdle in a disparate impact race discrimination case, the plaintiff must make out a prima facie case "that [a] facially neutral employment practice ha[s] a significantly discriminatory impact." Connecticut v. Teal, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982). Demonstrating disparate impact in the first instance can be tricky business; it often involves ominous-sounding methods of statistical inquiry like "multiple regression analysis," *see* Eastland v. TVA, 704 F.2d 613, 621 (11th Cir. 1983), "standard deviation," *see* Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 995 n. 3, 108 S.Ct. 2777, 2789 n. 3, 101 L.Ed.2d 827 (1988) (plurality), and the EEO's "four-fifths rule," *see id.* But what the plaintiff must attempt to do is show that there is a legally significant disparity between (a) the racial composition, caused by the challenged employment practice, of the pool of those enjoying a job or job benefit; and (b) the racial composition of the qualified applicant pool. *See* Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 650-51, 109 S.Ct. 2115, 2121, 104 L.Ed.2d 733 (1989); Edwards v. Wallace Community College, 49 F.3d 1517, 1520 (11th Cir. 1995).

*Id.* (footnotes omitted).

In the instant case, Plaintiff does not allege any facts suggesting that the FCAT requirement has a significantly disparate impact on black students by excluding their promotion to the next grade level. Therefore, Plaintiff has failed to state a disparate impact claim under 42 U.S.C. § 2000d.

Additionally, Plaintiff has failed to state a claim under the LPPPA or the LCCA. It is well established that section 1983 may be used to file a cause of action against a state agent who has violated a federal statute. *See* Wright v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 423, 107 S.Ct. 766, 93 L. Ed. 2d 781 (1987); Aristil v. Housing Authority of Tampa, Florida, 54 F. Supp. 2d 1289 (M.D. Fla. 1999). While a cause of action may arise under the LPPPA for noncompliance with its provisions, Plaintiff does not allege that Defendants failed to fulfill any obligation under the LPPPA and its regulations. Assuming arguendo that a cause of action may arise under the LCCA for noncompliance with its provisions, Plaintiff has likewise failed to state how Defendants failed to comply with its provisions. Additionally, the LPPPA applies to public housing projects; its coverage does not extend to public schools. Thus, Plaintiff has failed to state a claim under the LPPPA or the LCCA.

Finally, because Plaintiff's federal claims should be dismissed, the court must also dismiss the related state claims for want of subject matter jurisdiction, since there remains no independent basis for federal jurisdiction. Aldinger v. Howard, 427 U.S. 1, 19, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976); Roper v. Edwards, 815 F.2d 1474, 1477 (11th Cir. 1987).

Accordingly, it is respectfully **RECOMMENDED**:

That this case be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for Plaintiff's failure to state a claim upon which relief may be granted.

At Pensacola, Florida this 28th day of April 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

Case No.: 3:05cv445/MCR/EMT

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**